Azra BAŠIĆ, Petitioner–Appellant,

v.

Timothy STECK, Acting United States Marshal, Eastern District of Kentucky, Respondent–Appellee.

No. 15–5780.

United States Court of Appeals, Sixth Circuit.

Argued: March 16, 2016.

Decided and Filed: April 14, 2016.

ARGUED: Patrick F. Nash, Nash Marshall, PLLC, Lexington, KY, for Appellant. David M. Lieberman, United States Department of Justice, Washington, D.C., for Appellee. ON BRIEF: Patrick F. Nash, Nash Marshall, PLLC, Lexington, KY, for Appellant. David M. Lieberman, United States Department of Justice, Washington, D.C., Charles P. Wisdom, United States attorney's Office, Lexington, Kentucky, for Appellee.

Before: BATCHELDER and WHITE, Circuit Judges; LIPMAN, District Judge.*

## OPINION

ALICE M. BATCHELDER, Circuit Judge.

Azra Bašić is a Balkan native who came to the United States in 1994 as a refugee to escape the vicious civil war that was tearing apart Yugoslavia in the 1990s. She eventually settled in Kentucky and became a naturalized United States citizen. She now stands accused in Bosnia and Herzegovina (Bosnia), one of Yugoslavia's successor states, of crimes committed against ethnic Serbs during the war while Bašić was a member of the Croatian army. Bosnia—specifically the Republic of Srpska (i.e., the "Serb Republic"), a quasi-independent administrative entity within Bosnia—has asked the United States to extradite Bašić so that she can stand trial.

The Department of State filed a Complaint for Extradition in 2011. The complaint was assigned to a United States Magistrate Judge, who certified it after concluding that Bašić was extraditable under a 1902 extradition treaty between the United States and the Kingdom of Serbia. See Treaty for the Mutual Extradition of Fugitives from Justice, U.S.–Serb., Oct. 25, 1901, 32 Stat. 1890 [hereinafter Treaty].[1]

█ Direct appeal is not available in extradition proceedings, see Collins v. Mil-

---

* The Honorable Sheryl H. Lipman, United States District Judge for the Western District of Tennessee, sitting by designation.

1. On appeal, the parties agree that the 1902 Treaty applies to this case since Bosnia is a successor state of the Kingdom of Serbia.

*ler,* 252 U.S. 364, 369, 40 S.Ct. 347, 64 L.Ed. 616 (1920), so Bašić filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241. The district court denied the petition, and Bašić filed this timely appeal. She raises two arguments: she contends, first, that the Treaty prohibits extradition of U.S. citizens to Bosnia, and second, that the Bosnian government failed to produce a warrant for Bašić's arrest as required by the Treaty. We consider each in turn.

### I. Extradition of U.S. Citizens

Under the Treaty, each country has a general obligation to honor extradition requests, Treaty, *supra* at 2, Art. II, but neither country "shall be bound to deliver up its own citizens," *id.,* Art. V. According to Bašić, this provision erects an absolute bar on the extradition of U.S. citizens to Bosnia that can be removed only by the ratification of a new treaty. This is as untenable as it sounds, but we nevertheless provide some analysis.

We begin with the Supreme Court's decision in *Valentine v. United States ex rel. Neidecker,* which considered nearly identical language in an extradition treaty between the U.S. and France and concluded that U.S. citizens could not be extradited under that treaty. 299 U.S. 5, 8, 18, 57 S.Ct. 100, 81 L.Ed. 5 (1936). The Court explained that the power to extradite "is a national power," but that "the Constitution creates no executive prerogative to dispose of the liberty of the individual." *Id.* at 8–9, 57 S.Ct. 100. Thus, "the legal authority [to extradite] does not exist save as it is given by act of Congress or by the terms of a treaty." *Id.* at 9, 57 S.Ct. 100. With the exception of extradition from an occupied country or territory, Congress had not at that time given the executive power to extradite anyone, but had only defined the procedures for carrying out existing

extradition treaties. *Id.* The extradition treaty between the U.S. and France did not explicitly grant such a power to the executive, nor was the Court willing to read the provision that neither party "shall be bound to deliver up its own citizens" as implying such authority. *Id.* at 18, 57 S.Ct. 100. In light of this, the Court concluded, the executive was "without power to surrender" U.S. citizens to France. *Id.*

Congress addressed this lack of power in 1990 by passing 18 U.S.C. § 3196, which provides that

> If the applicable treaty or convention does not obligate the United States to extradite its citizens to a foreign country, the Secretary of State may, nevertheless, order the surrender to that country of a United States citizen whose extradition has been requested by that country if the other requirements of that treaty or convention are met.

Bašić contends that this statute is an unconstitutional attempt by Congress to circumvent the treaty-making requirements of Article II, but her argument is premised on the faulty assumption that § 3196 conflicts with the Treaty. It does not.

*Valentine* did not address what a *nation* may do under the relevant treaty language, but rather which governmental actors *within the United States government* are empowered (or not) to use their discretion to extradite U.S. citizens. But we need not rely merely on the logic of the opinion; *Valentine*—on no fewer than five occasions—explained that the executive's lack of discretionary authority could be remedied either by amending the treaty *or* by enacting a "statute conferring an independent power" on the executive. 299 U.S. at 18, 57 S.Ct. 100; *accord Munaf v. Geren,* 553 U.S. 674, 704, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) ("[T]he Executive may not extradite a person held within the United States unless 'legal authority' to do so 'is given by act of Congress or by the

terms of a treaty.'" (quoting *Valentine*, 299 U.S. at 9, 57 S.Ct. 100)).

There is no merit to Bašić's contention that *Valentine* "only sanctions congressionally authorized extradition independent of a treaty when it occurs in a foreign country or territory 'occupied by or under the control of the United States[.']" Nor is she correct that, "[o]utside of this 'limited provision[,'] acts of Congress independent of a treaty can only define '... the procedure to carry out an existing extradition treaty or convention[.']" Reply Br. at 2 (citations omitted; ellipsis in original). Indeed, this argument is a gross distortion of what *Valentine* actually said, casting as normative a passage that was descriptive:

> Whatever may be the power of the Congress to provide for extradition independent of treaty, that power has not been exercised save in relation to a foreign country or territory occupied by or under the control of the United States. Aside from that limited provision, the Act of Congress relating to extradition simply defines the procedure to carry out an existing extradition treaty or convention.

299 U.S. at 9, 57 S.Ct. 100 (internal quotation marks, citations, and footnote omitted).[2]

The only support that Bašić can muster in support of her position is a district court opinion that characterized § 3196 as "an unprecedented Congressional action" to "amend" treaties like the one at issue in this case. *Gouveia v. Vokes*, 800 F.Supp. 241, 250 (E.D.Pa.1992). But that case reached this conclusion only by first making the same mistake Bašić does, concluding, without analysis, that the relevant treaty language "forbids the extradition of American citizens." *Id.* at 242 (citing *Valentine*, 299 U.S. at 5, 57 S.Ct. 100). This treaty language does no such thing: there is a vast difference between not being bound to do an act and being forbidden to do it. Finally, the only thing amended by § 3196 is the U.S.Code. *See Hilario v. United States*, 854 F.Supp. 165, 173 (E.D.N.Y.1994).[3] And § 3196 is dispositive: the Secretary of State is empowered to extradite U.S. citizens to Bosnia, provided that the Treaty's other requirements are met.

## II. Warrant Requirement

■ Bašić has a more plausible argument with respect to the Treaty's warrant requirement. Under the Treaty, when a nation seeks the extradition of a person who is not a convict but who has been charged with a crime, it must provide "a duly authenticated copy of the warrant of arrest in the country where the crime has been committed." Treaty, *supra* at 2, Art. III.

Nothing in the record bears the title "Warrant of Arrest." Instead, Bosnia submitted an October 19, 2006 decision from a Bosnian Court that includes what appears to be a finding of probable cause and an order that Bašić be detained. Bosnia also submitted a document from a Bosnian Prosecutor's office, dated July 9, 2007, which states that the office was investigating Bašić "due to a reasonable doubt that" she committed war crimes, that she had

---

**2.** An interesting question, not raised in this case, is what limitations (if any) Article I of the Constitution places on Congress' authority "to provide for extradition independent of a treaty."

**3.** For this reason, Bašić's reliance on *Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C.Cir.2003), and *United States v. Palestine Liberation Organization*, 695 F.Supp. 1456, 1468 (S.D.N.Y.1988), is misplaced. These cases, Bašić contends, support her argument that § 3196 does not authorize her extradition because Congress did not intend to amend the Treaty. But her argument assumes that § 3196 conflicts with the Treaty, and it does not.

been recently sighted in Bosnia, that there was an outstanding "Decision on order for detention," (*i.e.*, the 2006 court order), and that "it [wa]s necessary to arrest [Bašić] ... in accordance with the Decision on order for detention and Order for issuing international arrest warrant."

Bašić contends that the 2007 document proves that there *is* an arrest warrant in this case—the "international arrest warrant"—and that extradition is impermissible because that warrant is not in the record. This enthymeme does not bear up under scrutiny: the unstated premise—that there may be only one arrest warrant—is false.[4] And, more importantly, the documents in the record do, in fact, constitute a valid arrest warrant under Bosnian law.

The Criminal Procedure Code of Bosnia and Herzegovina sets out a two-step process for the issuance of an arrest warrant. The first step takes place in a court:

(1) Issuance of a warrant may be ordered if the suspect or the accused against whom criminal proceedings have been instigated due to a criminal offense for which it is possible to pronounce a prison sentence of three (3) years or more is on the run, and an order for his apprehension or a decision specifying his detention has been issued.

(2) Issuance of a warrant shall be ordered by the Court.... [And] shall be submitted to the police authorities for the purpose of its execution.

Crim. P.Code, Art. 443 (Bosn. & Herz.), *available at* http://www.tuzilastvobih.gov.ba/?opcija=sadrzaj&kat=4&id=40&

jezik=e. The second step is the actual issuance of the warrant by the "responsible police body designated by the Court." *Id.*, Art. 446. The district court order and the subsequent directive from the Bosnian Prosecutor's office satisfy both steps, respectively. These documents, moreover, include the elements of an arrest warrant: a probable cause finding by a neutral magistrate and a direction that "a law-enforcement officer ... arrest and take a person into custody." *Black's Law Dictionary* 1818–19 (10th ed.2014).

Further, a 2011 document, included in the record, from the "Ministry of Justice of BiH Sarajevo," explains that the 2007 "Directive to ... find and arrest Basic," which was issued "in accordance with the Order of the District Court.... dated October 19, 2006, for detention and issuance of an international arrest warrant" is "'the Arrest Warrant' in this matter."[5] We will not second guess this determination. *See Grin v. Shine*, 187 U.S. 181, 185, 23 S.Ct. 98, 47 L.Ed. 130 (1902). Indeed, we see no reason why warrants must use the word "warrant" any more than contracts must say "contract." We therefore hold that the documents in the record constitute "a duly authenticated copy of the warrant of arrest," as required by the Treaty.

### III. Conclusion

For the foregoing reasons, we affirm the district court's judgment denying Bašić's *habeas corpus* petition.

---

4. Whether the international arrest warrant would satisfy the Treaty's warrant requirement is a question that we do not reach.

5. Documents in a similar extradition case, *In re Extradition of Nezirovic*, are consistent with this. 2013 WL 5202420 (W.D.Va. Sept. 16, 2013). The record in that case included a

similar court order, which Bosnian authorities described as "simply a procedural step" prior to the issuance of the warrant. 7:12–MC–39 (W.D.Va.), Doc. 18–4 at Page ID# 114–15; *see also id.* Doc. 8–2 at Page ID# 22.