In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1183

PEDRO RIVAS-PENA,

*Petitioner,*

*v.*

JEFFERSON B. SESSIONS III,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A044 760 094

ARGUED JULY 6, 2018 — DECIDED AUGUST 21, 2018

Before SYKES, HAMILTON, and BRENNAN, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Pedro Rivas-Pena has been a lawful permanent resident of the United States and is a citizen of Mexico. He faces removal to Mexico because of a state drug-trafficking conviction. He has applied for deferral of removal under the Convention Against Torture, alleging that he fears returning to Mexico because members of Los Zetas cartel consider him responsible for the loss of drugs and currency worth

more than half a million dollars. An immigration judge dismissed as "speculative" Rivas-Pena's fear of retribution from the cartel, denied his application for Convention Against Torture deferral, and ordered him removed to Mexico. The Board of Immigration Appeals upheld the judge's decision, and Rivas-Pena petitions for review. Because neither the immigration judge nor the Board articulated any basis for disagreeing with an expert opinion that corroborates Rivas-Pena's fear of torture, we grant the petition for review and remand for further proceedings.

I.  *Factual and Procedural Background*

The facts most salient to Rivas-Pena's claim for Convention Against Torture deferral are undisputed. Rivas-Pena, who is now 44 years old, entered the United States as a lawful permanent resident in 1996. He was convicted of drug-related crimes in 1997 and 2017. For the latter conviction—possession of cocaine with intent to distribute, 720 ILCS 570/401(a)(2)(A)—he was sentenced to eight years in prison. But he was released on parole the same day that he was sentenced because he had accumulated substantial good-time credit during three and a half years of pretrial detention. (The reason for the delay is unclear.) He was then transferred to federal immigration custody and charged with removability based on his convictions for (1) a controlled substance offense, 8 U.S.C. § 1227(a)(2)(B)(i), and (2) an aggravated felony, § 1227(a)(2)(A)(iii). Rivas-Pena conceded that he was removable on both grounds but applied—based on his fear of torture by Los Zetas cartel—for deferral of removal under the Convention Against Torture, 8 C.F.R. § 1208.17.

At his hearing before the immigration judge, Rivas-Pena explained that he became involved with Los Zetas through a

former classmate named Salvador Estrada. Rivas-Pena had attended middle school with Estrada in Mexico, and they reconnected in Chicago in December 2011. Rivas-Pena was underemployed at the time, and Estrada supposedly ran a construction business. Rivas-Pena asked Estrada for work. Estrada did not have work for Rivas-Pena, but he offered "good pay" to rent storage space in Rivas-Pena's garage. Rivas-Pena accepted this proposal, and the next week two men delivered twenty toolboxes to the garage. Rivas-Pena said he did not look inside the toolboxes.

Over the next several months, Estrada paid Rivas-Pena thousands of dollars in cash, much more than Rivas-Pena expected. He eventually asked Estrada why he was paying so much for storage. Estrada told him that the toolboxes contained "contraband," and he warned Rivas-Pena that he "could no longer leave [Estrada's] organization" and "was responsible for what might happen" to the contraband. Rivas-Pena later read online that Estrada had been charged with federal drug crimes based on allegations that he had helped Los Zetas transport "millions of dollars in drug proceeds between Chicago and Mexico." But Estrada still paid Rivas-Pena $2,000 every few months for storage space. The last time Rivas-Pena saw Estrada was in July 2013. Estrada remains a fugitive from federal authorities. See Executive Committee Order, Doc. 238, *United States v. Trevino*, No. 11 CR 784 (N.D. Ill. Dec. 21, 2016) (reassigning Estrada's case to court's Fugitive Calendar).

In October 2013, Chicago police arrested Rivas-Pena and searched his home. They seized six kilograms of cocaine, half a kilogram of heroin, $144,000 in cash, and two guns. The guns belonged to Rivas-Pena, but all of the drugs and

most of the cash belonged to Los Zetas. Rivas-Pena estimates that he "owes" the cartel half a million dollars because of the seizure.

Illinois initially charged Rivas-Pena with two drug and three firearm offenses, but he pleaded guilty to only one count of distributing at least 15 but less than 100 grams of cocaine, 720 ILCS 570/401(a)(2)(A). As mentioned above, he was released on parole the very day he was sentenced to eight years in prison. Rivas-Pena worries that—in addition to blaming him for the lost contraband—Los Zetas members will infer from what might be seen as a lenient sentence that he cooperated with the authorities.

In addition to his testimony at the hearing and in an affidavit, Rivas-Pena submitted a report from Dr. Nathan Jones, a scholar who has studied drug violence in Mexico. Rivas-Pena sought to have Dr. Jones testify via telephone as an expert on Mexican drug organizations, but the judge's time constraints prompted the government to stipulate that Dr. Jones would testify consistently with the report that he had prepared about Rivas-Pena's case. The government did not challenge that report.

Dr. Jones's report paints a bleak picture of Rivas-Pena's chances of survival in Mexico. According to Dr. Jones, "Several hundred thousand dollars is a conservative estimate" of Rivas-Pena's debt to Los Zetas because "6 kilos of cocaine could be valued at $900,000" using retail prices. Dr. Jones wrote that it is "highly likely" that the cartel will hold Rivas-Pena "responsible for the lost drugs and cash," not only because Estrada "implied that [Rivas-Pena] was responsible for the materials" but also because "Los Zetas are known for

strict accounting." The cartel is also "known for extorting individuals with ties back to the United States and creating fictitious debts," so it does not actually matter whether Estrada and his confederates truly believe that Rivas-Pena was at fault for the lost drugs and money. He would be a target either way. Dr. Jones also endorsed Rivas-Pena's fear that the cartel might interpret "his 4 years served on an 8 year sentence on a felony X conviction … as a sign of [Rivas-Pena] having been an informant." Thus, in Dr. Jones's expert opinion, Rivas-Pena faces "a very high to near certainty [] of being tortured and killed if deported to Mexico."

The immigration judge denied Rivas-Pena's application for Convention Against Torture deferral and ordered him removed to Mexico. The judge did not make an explicit credibility finding, but he seems to have assumed the truth of Rivas-Pena's account. Still, the judge found that Rivas-Pena's fears are "speculative" because neither Estrada nor any other member of Los Zetas has yet attempted to harm Rivas-Pena or his family. The judge acknowledged that Dr. Jones provided "ample information regarding the conditions in Mexico and the Zetas organization," but he did not discuss Dr. Jones's expert opinion about Rivas-Pena's risk of harm. The Board of Immigration Appeals dismissed Rivas-Pena's appeal for substantially the same reasons that the judge gave: "That the Zetas seek revenge or retribution against persons perceived as informants or owing debts to them does not overcome the particular facts of this case, which show that since July 2013 [Rivas-Pena] has had no contact from any Zetas person."

II. *Analysis*

Rivas-Pena's criminal history makes him removable and ineligible for any form of immigration relief other than deferral of removal under the Convention Against Torture. See 8 C.F.R. § 1208.17; *Perez v. Sessions*, 889 F.3d 331, 333 (7th Cir. 2018). To qualify for this relief, Rivas-Pena must show that if he were removed to Mexico, it is "more likely than not" that he would be tortured. See 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a); *Perez*, 889 F.3d at 334. This court reviews the denial of deferral under the Convention Against Torture for "substantial evidence." *Bernard v. Sessions*, 881 F.3d 1042, 1047 (7th Cir. 2018). As in other administrative law regimes, however, the substantial evidence test requires the judge to build a "logical bridge from evidence to conclusion." *Cojocari v. Sessions*, 863 F.3d 616, 626 (7th Cir. 2017) (asylum, statutory withholding of removal, and Convention Against Torture relief), quoting *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016) (Social Security disability benefits).

Here substantial evidence does not support the judge's decision. The parties agree that a fugitive Los Zetas leader warned Rivas-Pena that he would be responsible if anything happened to the contraband and that "several hundred thousand dollars," in Dr. Jones's expert opinion, "is not an amount the Zetas will forgive and forget." Given these facts—and Dr. Jones's additional unchallenged opinion that Rivas-Pena faces "a very high to near certainty [] of being tortured and killed if deported to Mexico"—a reasonable factfinder would not dismiss as merely "speculative" Rivas-Pena's fear of harm by Los Zetas. See *Rodriguez Molinero v. Lynch*, 808 F.3d 1134, 1136–38 (7th Cir. 2015) (concluding, in light of unchallenged expert

testimony, that alien who owed Los Zetas $30,000 and had co-operated with Drug Enforcement Administration faced substantial risk of torture).

In this court, the government seeks to distinguish Rivas-Pena's situation from instances in which members of Los Zetas have punished those who "pocket[ed] money or rip[ped] off drugs" belonging to the cartel. According to the government, Rivas-Pena "adduced no evidence showing that the Zetas torture individuals who are arrested in connection with their participation in the Zeta's criminal enterprise and whose drugs are seized as a result." In other words, the government contends that Rivas-Pena is not within the class of persons whom the cartel would blame for the loss of so much money and drugs.

There are two problems with this argument. First, neither the immigration judge nor the Board relied on it as a basis for denying Rivas-Pena's claim. See *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Musa v. Lynch*, 813 F.3d 1019, 1024 (7th Cir. 2016). The only explanation the Board and the judge gave for dismissing Rivas-Pena's fears as "speculative" was that neither Rivas-Pena nor his family have been "tortured, harmed, threatened, or even inquired after" by Los Zetas since 2013. That explanation from the Board and the judge fails to engage with why Rivas-Pena has had no recent contact with Los Zetas: he has been in jail or federal immigration custody in the United States ever since he incurred his "debt" to the cartel in 2013. While it is conceivable that the cartel has members who are detained in the United States, it is not surprising that the cartel would bide its time until Rivas-Pena is no longer protected by American authorities. See *Rodriguez-Molinero*,

808 F.3d at 1138 ("[O]ne could hardly expect [a cartel member] to visit the petitioner in an American prison.").

The government's argument that Los Zetas would not consider Rivas-Pena a debtor also ignores an important portion of Dr. Jones's report. He explained that Los Zetas are "known for extorting individuals with ties back to the United States and creating fictitious debts." According to Dr. Jones, the loss of several hundred thousand dollars' worth of currency and drugs is "the perfect excuse to attempt to extort more money from an individual before killing them." So even if Los Zetas know the reason for the seizure, they "are still likely to act upon it as a debt given [that] they make much of their money from extortion." Neither the judge nor the Board grappled with this portion of Dr. Jones's report, leaving an important gap in the "logical bridge" between evidence and conclusion. This evidence must be addressed on remand.

A final issue remains. Throughout these proceedings, the parties have focused on whether Rivas-Pena faces a substantial risk of being tortured by Los Zetas. They have not addressed whether the torture would occur with at least the "acquiescence of a public official," which is required for any claim under the Convention Against Torture. See 8 C.F.R. § 1208.18(a)(1); *Ramos-Braga v. Sessions*, 890 F.3d 686, 689, 692 (7th Cir. 2018). The agency should address that issue on remand.

Accordingly, we GRANT Rivas-Pena's petition for review of the denial of his petition for deferral of removal under the Convention Against Torture and REMAND for further proceedings consistent with this opinion.