In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 18-2723

RODOLFO DEIBY BURGOS NOELLER,

*Petitioner-Appellant,*

*v.*

JASON WOJDYLO, Acting United States Marshal
for the Northern District of Illinois,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-CR-664-1 — **Rebecca R. Pallmeyer**, *Judge.*

———————

ARGUED NOVEMBER 27, 2018 — DECIDED APRIL 29, 2019

———————

Before BAUER, HAMILTON, and BARRETT, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Mexico asked the United States
to extradite appellant Rodolfo Deiby Burgos Noeller for the
2015 murder of Rosa Lorena Jacobo Carrillo in Mexico City.
The United States extradition treaty with Mexico establishes
the requirements for each country to request the arrest and
extradition of a person within the other's borders. See Extra-
dition Treaty, Mexico-U.S., art. X, § 3, Feb. 6, 1980, 31 U.S.T.

5059 (1980). In accord with the treaty, Mexico submitted a formal request along with an authenticated arrest warrant and other supporting documents. After a hearing under 18 U.S.C. § 3184, the presiding magistrate judge found that Mexico's request complied with the treaty requirements, including submitting evidence establishing probable cause that Burgos Noeller is guilty of the crime for which extradition is sought. The magistrate judge granted the United States government's request for the certification of Burgos Noeller's extradition to Mexico and ordered him committed to the custody of the U.S. Marshals Service. See *In re Noeller*, No. 17 CR 664, 2018 WL 1027513 (N.D. Ill. Feb. 23, 2018).

Burgos Noeller then filed a petition for a writ of habeas corpus in the district court seeking review of the magistrate judge's orders certifying him for extradition and committing him to custody. The district court denied the petition, and we review its decision now in this appeal. We affirm. Mexico has submitted a valid request for extradition, which United States courts must honor. Burgos Noeller's legal and factual challenges to the extradition request ask us to go well beyond the narrow role for courts in the extradition process.

I.   *Factual & Procedural Background*

A.  *Jacobo Carrillo's Murder*

On January 30, 2015, Rosa Lorena Jacobo Carrillo was shot and killed outside her mother's home in Mexico City. Until some point in the last year of her life, Jacobo Carrillo had been involved in a long-term extramarital relationship with Burgos Noeller. When the relationship ended, Burgos Noeller and Jacobo Carrillo already had two young children together.

According to statements submitted by Jacobo Carrillo's family, on the night of her murder, Burgos Noeller called her, accused her of seeing someone else, and threatened her life. The statements from Jacobo Carrillo's family also asserted that later that evening, Burgos Noeller came to her mother's house, where he slapped and grabbed Jacobo Carrillo before shooting her twice in the head.

Burgos Noeller denies involvement in Jacobo Carrillo's murder. He maintains that he ended the relationship with her after he found out about her family's affiliation with the Los Pepes gang and Zetas drug cartel. He says that on the morning after the murder, he received two calls from Jacobo Carrillo's cousin warning him that Jacobo Carrillo's mother wanted to blame him for the murder and that she had hired hitmen to kill him.[1]

Burgos Noeller asserts that after the calls, he fled Mexico for the United States with his wife and their two children. Several of his family members provided affidavits describing incidents after he left Mexico in which members of Los Pepes came to their homes looking for Burgos Noeller, threatened them, beat them, and damaged their property.

B.   *Immigration and Extradition Proceedings*

Burgos Noeller has been the subject first of immigration proceedings and then criminal charges in Mexico and these extradition proceedings. His wife and children are U.S. citizens, but he is not. The Department of Homeland Security took him into custody in February 2015 and began removal

---

[1] The cousin also provided an affidavit asserting that his aunt, Jacobo Carrillo's mother, blamed Burgos Noeller for her daughter's death and intended to have him assassinated.

proceedings in an immigration court in March. He was charged with removability under the Immigration and Nationality Act for entering the country without being admitted or paroled. 8 U.S.C. § 1182(a)(6)(A)(i).

During his removal proceedings, Burgos Noeller asserted his fear of Los Pepes. He sought asylum, withholding of removal, and protection under the Convention Against Torture. See 8 U.S.C. § 1158; 8 U.S.C. § 1231(b)(3); and 8 C.F.R. § 1208.16, respectively. Immigration judges have twice denied his applications, and Burgos Noeller's appeal of the second decision to the Board of Immigration Appeals was pending when Mexico submitted its extradition request.

Acting on behalf of the government of Mexico, the United States filed an extradition complaint in the U.S. District Court for the Northern District of Illinois and obtained a warrant for Noeller's arrest pursuant to 18 U.S.C. § 3184. On October 12, 2017, Noeller was placed in the custody of the U.S. Marshals Service. The Department of Homeland Security asked the Board of Immigration Appeals to hold its removal proceedings in abeyance pending resolution of the extradition request. The Board agreed, over Burgos Noeller's objection.

Through the removal process, Burgos Noeller learned that a criminal trial court in Mexico City had issued a warrant to arrest him for Jacobo Carrillo's murder. He has tried to challenge the warrant by starting what is called an *amparo* proceeding in Mexico. An *amparo* proceeding is a criminal protection lawsuit "somewhat similar to *habeas corpus* and, *inter alia*, is the means to review and annul unconstitutional judicial decisions." *United States v. Fowlie*, 24 F.3d 1059, 1064 (9th Cir. 1994). It "is a proceeding created under the Mexican Constitution to protect individuals against state abuses by

empowering Mexican federal courts to review government action." *In re Mathison*, 974 F. Supp. 2d 1296, 1303 (D. Or. 2013).

The status of Burgos Noeller's *amparo* proceeding is not clear on this record. According to Burgos Noeller, the suit ended in the suspension of his arrest warrant. First, he says, the Second District Judge for Protection in Criminal Matters in the Federal District of Mexico issued an order that suspended the warrant temporarily on August 26, 2015. He also says the same court in Mexico then issued a permanent suspension of the arrest warrant on September 22, 2015. To support this version of events, Burgos Noeller submitted two unauthenticated documents. He asserts they are copies of the two Mexican court orders suspending his arrest warrant. Burgos Noeller also submitted English translations of these documents. These translations are difficult to follow. When asked at oral argument who translated the orders, Burgos Noeller's lawyer told this court he was unsure, but he thought it had been a person in his own office. He was also unable to explain to what extent the translations were performed by a person as opposed to a computer translation program. Regardless of the uncertain status of the *amparo* proceeding, the executive branch of Mexico's government remains convinced that the original arrest warrant remains valid and enforceable.

In the Northern District of Illinois, Magistrate Judge Cole held an extradition hearing for Burgos Noeller pursuant to 18 U.S.C. § 3184 and granted the government's request for extradition. *In re Noeller*, No. 17 CR 664, 2018 WL 1027513 (N.D. Ill. Feb. 23, 2018). That was not an appealable order, so Burgos Noeller filed a petition for a writ of habeas corpus challenging Judge Cole's decision that he was extraditable. On March 9,

2018, Judge Cole formally certified Burgos Noeller's extradition. The district court then denied his petition for a writ of habeas corpus. Burgos Noeller also sought a court order directing the Board of Immigration Appeals to decide his pending immigration claims. The district court denied this request, finding that it lacked jurisdiction to issue such an order to the Board. Burgos Noeller then filed this appeal of the denial of his habeas corpus petition.

II. *The Extradition Process*

Before analyzing Burgos Noeller's specific arguments on appeal, we outline the extradition process and the limited role that courts play in it. Extradition is governed by treaties, statutes, and a long line of federal case law. "Authority over the extradition process is shared between the executive and judicial branches." *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (en banc). As shown below, however, the judicial role is narrow. In extradition, discretionary judgments and matters of political and humanitarian judgment are left to the executive branch.

A. *Relevant Provisions of the Extradition Treaty*

We start with the governing treaty between the United States and Mexico. Article X, Section 3 spells out what Mexico or the United States must submit to secure the arrest and extradition of an accused:

> 3.- In addition, when the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by:
>
> > a) A certified copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party;

> b) Evidence which, in accordance with the laws of the requested Party, would justify the apprehension and commitment for trial of the person sought if the offense had been committed there.

Extradition Treaty, Mexico-U.S., art. X, § 3, Feb. 6, 1980, 31 U.S.T. 5059 (1980). The "requested Party" in this case is the United States. To obtain the arrest and extradition of Burgos Noeller, Mexico had to present evidence that amounted to "probable cause under federal law that he committed the offense he is charged with by the [Mexican] government." See *Bovio v. United States*, 989 F.2d 255, 258 (7th Cir. 1993).

B. *Judicial Function & Standard of Review*

By statute, foreign nations with whom the United States has extradition treaties may seek the extradition of a person within the United States by filing a request through the proper diplomatic channels. 18 U.S.C. §§ 3184–3195; *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981). The terms of the bilateral treaty govern the document requirements. After the United States government receives a formal extradition request through diplomatic channels, the request will be forwarded to a U.S. Attorney's Office, which will typically file a formal complaint and seek an arrest warrant from a judge. *Eain*, 641 F.3d at 508. Upon the filing of such a complaint, an extradition officer—"any justice or judge of the United States, or any magistrate authorized … by a court of the United States, or any judge of a court of record of general jurisdiction of any State"—will conduct a hearing. 18 U.S.C. § 3184.

"At an extradition hearing, the 'judicial officer's inquiry is confined to the following: whether a valid treaty exists;

whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof.'" *Skaftouros v. United States*, 667 F.3d 144, 154–55 (2d Cir. 2011), quoting *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000). Extradition treaties "should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them." *Factor v. Laubenheimer*, 290 U.S. 276, 293 (1933); see also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012) (Canon 4: "A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored.").

If the judge finds that the requested person is extraditable, the judge *must* certify the extradition to the Secretary of State. See *Santos*, 830 F.3d at 992; *In re Mathison*, 974 F. Supp. 2d at 1304. The discretion in the process belongs to the executive branch, not the judiciary. The Secretary of State has "sole discretion to determine whether or not extradition should proceed further with the issuance of a warrant of surrender." *Eain*, 641 F.2d at 508; see 18 U.S.C. § 3186.

Judicial officers' extradition orders are not considered final decisions appealable as of right under 28 U.S.C. § 1291. See *Skaftouros*, 667 F.3d at 157. Courts have long recognized an alternative path for appellate review, through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See *Collins v. Miller*, 252 U.S. 364, 368–69 (1920); *Eain*, 641 F.2d at 508; *In re Assarsson*, 635 F.2d 1237, 1240 (7th Cir. 1980).

The scope of this habeas corpus review is narrow. In *Fernandez v. Phillips*, the Supreme Court clarified that only three categories of issues are open to inquiry. 268 U.S. 311, 312 (1925). Reviewing courts generally may consider "whether

the magistrate had jurisdiction, whether the offence charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty," i.e., probable cause. *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997) (reversing writs of habeas corpus), quoting *Fernandez*, 268 U.S. at 312. In addition, though, "federal courts undertaking habeas corpus review of extraditions have the authority to consider not only procedural defects in the extradition procedures that are of constitutional dimension, but also the substantive conduct of the United States in undertaking its decision to extradite if such conduct violates constitutional rights." *In re Burt*, 737 F.2d 1477, 1484 (7th Cir. 1984).

"The probable cause standard applicable to an extradition hearing is the same as the standard used in federal preliminary hearings," which means that "the magistrate's role is 'to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.'" *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006), quoting *Sidali v. I.N.S.*, 107 F.3d 191, 199 (3d Cir. 1997), quoting in turn *Peters v. Egnor*, 888 F.2d 713, 717 (10th Cir. 1989). A United States court dealing with an extradition request for an accused is obliged to resist any temptation to judge the guilt or innocence of the accused. "It is fundamental that the person whose extradition is sought is not entitled to a full trial at the magistrate's probable cause hearing." *Eain*, 641 F.2d at 508. The foreign government making the request is not required to try its case in a United States court. *Santos*, 830 F.3d at 991. And in the habeas corpus proceeding for review, "Our scope of review on this issue is limited to determining whether there is

'any evidence' to support the magistrate's finding of probable cause." *Eain*, 641 F.2d at 509.

Because an extradition hearing "is not a trial," the rights of the accused are more limited. *Charlton v. Kelly*, 229 U.S. 447, 461 (1913). Extradition hearings "embody no judgment on the guilt or innocence of the accused but serve only to insure that his culpability will be determined in another and, in this instance, a foreign forum." *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976). "[W]hat is at issue in the proceeding…is not punishability but *prosecutability*." *Skaftouros*, 667 F.3d at 155, quoting *In re McMullen*, 989 F.2d 603, 611 (2d Cir. 1993) (alterations in original). Neither the Federal Rules of Evidence nor the Federal Rules of Criminal Procedure apply to the extradition proceeding. See Fed. R. Evid. 1101(d)(3); Fed. R. Crim. P. 1(a)(5)(A).

An accused person facing extradition does enjoy due process rights, but the process due is confined by additional evidentiary rules that restrict the defense. *In re Burt*, 737 F.2d at 1484; see also *Martinez v. United States*, 793 F.3d 533, 556 (6th Cir. 2015) ("Courts have unanimously held that the government is bound by principles of due process in its conduct of extradition proceedings."), *rev'd on other grounds*, 828 F.3d 451 (6th Cir. 2016) (en banc). In particular, "An accused in an extradition hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof." *Eain*, 641 F.2d at 511; see *Charlton*, 229 U.S. at 461 ("To have witnesses produced to contradict the testimony for the prosecution is obviously a very different thing from hearing witnesses for the purpose of explaining matters referred to by the witnesses for the government"); *Collins v.*

*Loisel*, 259 U.S. 309, 316–17 (1922) (explaining and reaffirming distinction drawn in *Charlton*). Many courts have applied this distinction between permissible "explanatory" evidence and impermissible "contradictory" evidence, though it is often easier to describe this distinction than to apply it. See *Santos*, 830 F.3d at 992.

III. *Appellant's Challenges*

In most domestic habeas corpus cases, we review the factual findings of the district court for clear error and its legal determinations *de novo*. *Carter v. Thompson*, 690 F.3d 837, 843 (7th Cir. 2012). In habeas corpus cases challenging extradition decisions, however, appellate review of the district court is *de novo*. Both we and the district court review the magistrate judge's factual findings for clear error and his legal rulings *de novo*. See *Santos*, 830 F.3d at 1001.

On appeal, Burgos Noeller offers three reasons why the magistrate judge erred in certifying his extradition: (A) the arrest warrant that Mexico submitted was invalid, so that the submission was insufficient under Article X, Section 3 of the treaty; (B) there was no probable cause to believe that he committed the crime for which extradition was sought; and (C) it would violate his due process and equal protection rights to extradite him before his claims for asylum, withholding of removal, and Convention Against Torture relief are adjudicated. We address them in turn. None is persuasive.

A. *Arrest Warrant*

To comply with the requirements of the treaty, Mexico provided a certified arrest warrant for Burgos Noeller. The warrant Mexico submitted was issued by a judge of the Twenty-Fourth Criminal Court in the Federal District on June

18, 2015. Everyone agrees that this June 18, 2015 warrant was valid when it was issued. Petitioner Burgos Noeller argues, however, that his later *amparo* proceeding suspended the warrant, first temporarily, then indefinitely, rendering it invalid. Without a valid warrant, his argument goes, Mexico failed to satisfy the treaty's requirements. We treat this as a challenge within the second category of permissible challenges under *Fernandez v. Phillips*, whether the offense charged falls within the treaty, which we have understood as including whether the treaty's documentary requirements have been met. See 268 U.S. at 312; *DeSilva*, 125 F.3d at 1112; *Assarsson*, 635 F.2d at 1241 (considering whether bilateral treaty required formal charges in requesting country was second category issue, whether request met treaty requirements); see also *Oteiza v. Jacobus*, 136 U.S. 330, 334 (1890).

The terms of this treaty make extradition contingent upon Mexico's provision of "A certified copy of [a] warrant of arrest[.]" See Extradition Treaty, Mexico-U.S., art. X, § 3, Feb. 6, 1980, 31 U.S.T. 5059 (1980). Mexico's request satisfied this requirement.

Burgos Noeller argues that we should delve into the details of his *amparo* proceeding in Mexico to determine how they affected the validity of that arrest warrant. Given this facially valid arrest warrant, it is doubtful whether we could properly consider later developments in the courts of the requesting party to decide the validity of the warrant. The treaty is silent on continued validity, but one could argue there is an implied requirement that the warrant remain valid. Compare *Sacirbey v. Guccione*, 589 F.3d 52, 66–69 (2d Cir. 2009) (where treaty required "a duly authenticated copy of the warrant of arrest," habeas court found implied condition that issuing

court remain able to enforce it), with *In re Assarsson*, 635 F.2d at 1244 (where treaty did not expressly require charging document, court hearing habeas petition could not review magistrate's finding that person had been properly charged in Sweden).

Assuming for the sake of argument that we could consider the challenge, we would need at a minimum compelling, reliable evidence undermining confidence in the warrant's continued validity. Or, to be more precise, given our limited scope of review, the magistrate judge would have needed compelling, reliable evidence to that effect.

On this record, we simply have no idea what happened in Burgos Noeller's *amparo* proceedings in Mexico, or even whether they occurred, for that matter. Burgos Noeller has provided the United States courts with no reliable evidence on this subject. All we have are two unauthenticated documents in Spanish that Burgos Noeller asserts are court orders invalidating the warrant and nearly unintelligible translations of unknown origin and reliability. As demonstrated at oral argument, even now Burgos Noeller cannot vouch for the accuracy of these translations, despite the fact that he submitted the documents to a federal court.

More fundamentally, extradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law. Yet by disputing the validity of this warrant, Burgos Noeller asks us to scrutinize and evaluate *amparo*, "a highly complex legal institution" with which our courts are not sufficiently familiar. See *United States v. Fowlie*, 24 F.3d 1059, 1064 (9th Cir. 1994). He asks us to do so based on scant and unsubstantiated evidence. Even if we could find a reliable record of Burgos Noeller's *amparo* case, to adjudicate the

validity of the warrant we would need to decide what legal conclusion a Mexican court reached based on its analysis of Mexican laws and criminal procedure. That is simply not our job here. If Burgos Noeller thinks later developments in the Mexican courts have rendered his arrest warrant invalid, that challenge belongs in a Mexican court.

United States courts hearing extradition requests have consistently expressed an unwillingness to interpret foreign law to invalidate arrest warrants. See *Basic v. Steck*, 819 F.3d 897, 901 (6th Cir., 2016) (treaty's warrant requirement satisfied where other documents in record "include the elements of an arrest warrant," and court "will not second guess [Bosnia's] determination" that documents amounted to valid warrant); *Skaftouros v. United States*, 667 F.3d 144, 156, 160–61 n.20 (2d Cir. 2011) (finding Greek arrest warrant sufficient for extradition purposes despite technical errors, rejecting invitation to analyze further warrant's validity under Greek law, "defer[ring] to the Greek courts, which may consider whether Skaftouros or the Greek prosecutors have the better argument," and emphasizing that "an extradition judge should avoid making determinations regarding foreign law"); *Caltagirone v. Grant*, 629 F.2d 739, 744 (2d Cir. 1980) ("Treaty does not contemplate a review of the validity, under Italian law, of the Italian arrest warrants"); see also *In re Manea*, No. 15 MJ 157, 2018 WL 1110252, at *8 (D. Conn. Mar. 1, 2018) ("this Court properly relies on the representation of Romanian authorities that such warrant was valid, as required by the Treaty").

The limiting case, which provides the best support for Burgos Noeller's position, is *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir. 2009), but it was quite different from this case. At the time

of Sacirbey's extradition case, the Bosnian court that charged him and issued his arrest warrant no longer existed, and no other Bosnian court had jurisdiction over his case. *Id.* at 59, 63. "The only state organ not denying possession of the case but rather affirming its possession [was] the office of the National Prosecutor." *Id.* at 59. The Second Circuit granted Sacirbey's habeas petition, explaining that the treaty's requirement of a valid arrest warrant presumed the existence of a court system capable of enforcing that warrant. *Id.* at 67, 69.

Two years later, in another extradition case, the Second Circuit clarified just how limited its holding in *Sacirbey* had been: "*Sacirbey* stands for the unexceptional proposition that a foreign arrest warrant cannot suffice to show that a fugitive is currently charged with an offense, as required by most extradition treaties, where the court that issued the warrant no longer has the power to enforce it." *Skaftouros*, 667 F.3d at 160. The court emphasized that its "analysis in *Sacirbey* was limited to determining whether the requirements of the extradition were met; the majority opinion did not engage in questions of Bosnian law." *Id.*

The key differences between the cases show that *Sacirbey* does not help Burgos Noeller. In *Sacirbey*, the court had reliable evidence that the arrest warrant against the accused could no longer be enforced by any judicial body in the requesting nation. Critically, to reach that conclusion, the U.S. court did not inquire into or make any determinations about foreign law. Burgos Noeller's situation is very different. The information suggesting that the warrant is no longer valid simply is not reliable. Even if it were reliable, we could not determine its effect without investigating and interpreting Mexican law, and in particular the relationship between the underlying

prosecution and the *amparo* proceeding. (If it is anything like the relationship between U.S. criminal proceedings and collateral civil cases challenging a prosecution—think abstention under *Younger v. Harris*, 401 U.S. 37 (1971)—the issues could be quite nuanced and complex.) The Mexican judicial authority that issued the arrest warrant has not collapsed, as in *Sacirbey*. Mexico provided the documents required under the treaty. Accordingly, Burgos Noeller's challenge to the arrest warrant belongs in front of a Mexican court.

B.  *Probable Cause*

Turning to Burgos Noeller's second issue, we review the magistrate judge's finding of probable cause under a deferential standard. We ask only "whether there [was] any competent evidence to support [his] finding." *Bovio v. United States*, 989 F.2d 255, 258 (7th Cir. 1993). In support of its extradition request, Mexico submitted a statement from Jacobo Carrillo's niece, who says she witnessed the shooting and identified Burgos Noeller as the killer, as well as a statement from Jacobo Carrillo's sister, who says she heard the two gunshots that killed her sister and saw Burgos Noeller driving away from the crime scene. Both Jacobo Carrillo's niece and sister described the murderer driving away in a gray Jetta. Mexico also submitted a statement from one of Burgos Noeller's coworkers saying that she had recently rented a gray Jetta for him. There was also an autopsy report confirming that Jacobo Carrillo died from two gunshot wounds. We have no trouble here affirming the magistrate judge's conclusion that there was probable cause to believe that Burgos Noeller is guilty of the crime for which extradition is sought.

Burgos Noeller argues, however, that the magistrate judge was wrong to credit Mexico's evidence. He argues that the

statements from Jacobo Carrillo's family members are incon-
sistent, unreliable, and subject to undue influence from other
family members who are biased against him. These argu-
ments challenging the credibility of the evidence against him
have no place in extradition hearings. As noted above, an ac-
cused in an extradition hearing cannot offer contradictory ev-
idence but only "explanatory" evidence, described as "evi-
dence that 'explains away or completely obliterates probable
cause.'" *Santos*, 830 F.3d at 992, quoting *Mainero v. Gregg*, 164
F.3d 1199, 1207 n. 7 (9th Cir. 1999), superseded by statute on
other grounds, Pub. L. No. 105-277, § 2242. Evidence that con-
tradicts the demanding country's proof or poses questions of
credibility—i.e., contradictory evidence—is off-limits. *Eain*,
641 F.2d at 511. In the extradition proceeding in the United
States courts, Burgos Noeller was not entitled to contest the
credibility of the statements provided by Jacobo Carrillo's
family. These witnesses' potential biases and inconsistencies
are surely relevant to the ultimate question of Burgos No-
eller's guilt or innocence, but those issues must be addressed
in the Mexican criminal justice system, not ours.

Burgos Noeller made an offer of proof at his extradition
hearing, submitting eleven exhibits and testimony as to his in-
nocence. The exhibits included letters and affidavits of friends
and family who spoke to his positive character and also to the
danger of retribution he faces from Jacobo Carrillo's family or
Los Pepes if he is returned to Mexico. Burgos Noeller also sub-
mitted a report and the testimony of Dr. Nathan P. Jones, who
discussed the operation of Los Pepes and the infiltration of the
Mexican government by organized crime.[2] Dr. Jones offered

---

[2] Dr. Jones has submitted evidence on these topics in other cases, such
as *Rivas-Pena v. Sessions*, 900 F.3d 947, 949 (7th Cir. 2018), where his

no specific information about this case, however. Instead, he speculated on alternative, drug-related causes of Jacobo Carrillo's murder that do not involve Burgos Noeller pulling a trigger, as well as the "likelihood" that Burgos Noeller will be killed if he is returned to Mexico. Dr. Jones concluded that extraditing Burgos Noeller "would facilitate the ability of organized crime," specifically Los Pepes, to kill him, and that based on the evidence in the record, Jacobo Carrillo's murder was likely "a drug-related assassination."

The magistrate judge allowed Burgos Noeller's offer of proof, of course, to allow him to make a record for further review. But the judge ultimately found the evidence in the offer was not relevant to the probable cause question. *In re Noeller*, 2018 WL 1027513, at *4. We agree with the magistrate judge's decision and reasoning. Burgos Noeller's offer is relevant both to his ultimate guilt or innocence and to humanitarian arguments against returning him to Mexico. But ultimate guilt or innocence is for the Mexican courts to decide, and the humanitarian arguments must be directed to the executive branch of the United States government.

Under the settled rule of non-inquiry, the executive branch has sole authority to consider such humanitarian considerations in deciding on extradition requests. See *Hoxha v. Levi*, 465 F.3d 554, 563 (3d Cir. 2006) (petitioner should not be granted habeas relief based on his assertions that he will be tortured and may be killed by Albanian authorities if extradited because "such humanitarian considerations are within the purview of the executive branch and generally should not

---

testimony before the immigration judge was key in our decision to reverse the denial of relief under the Convention Against Torture.

be addressed by the courts in deciding whether a petitioner is extraditable").

"Once an individual is certified by a court as extraditable, the Secretary of State 'exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations' in deciding whether extradition is appropriate." *Hoxha*, 465 F.3d at 563, quoting *Sidali v. I.N.S.*, 107 F.3d 191, 195 n.7 (3d Cir. 1997). Courts must therefore "refrain from investigating the fairness of a requesting nation's justice system, and from inquiring into the procedures or treatment which await a surrendered fugitive in the requesting country." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) (internal citations and quotations omitted).

This rule of non-inquiry may seem counterintuitive coming from a court that routinely hears claims for asylum or relief under the Convention Against Torture. But the rule of non-inquiry is intended to prevent extradition courts from engaging in improper judgments about other countries' law enforcement and judicial procedures. More important, the rule "serves interests of international comity by relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request." *Hoxha*, 465 F.3d at 563. In keeping with this rule, the magistrate judge was right to reject Burgos Noeller's arguments regarding retaliation and his inability to receive a fair trial in Mexico, and we cannot consider the merit of these arguments on review.

C. *Due Process & Equal Protection*

Burgos Noeller's final argument is that his due process and equal protection rights were violated when the Board of

Immigration Appeals held in abeyance, pending the outcome
of his extradition, his immigration claims for asylum, with-
holding of removal, and relief under the Convention Against
Torture. Such stays, however, are not uncommon where the
same person is the subject of both immigration and extradi-
tion proceedings. See *Barapind v. Reno*, 225 F.3d 1100, 1107 (9th
Cir. 2000) ("As a matter of course, the BIA has held deporta-
tion proceedings in abeyance while extradition proceedings
are pending."). Such stays may often make sense because im-
migration and extradition proceedings are separate and inde-
pendent proceedings governed by different legal standards
and procedures. See *id.* at 1104–05 ("Extradition from the
United States is governed by 18 U.S.C. § 3184 (2000), and pro-
vides a separate and independent procedure from exclusion
or removal proceedings initiated under the INA for the re-
moval of an alien from the United States."); Restatement
(Third) of Foreign Relations Law § 478, reporters' note 6
(1987) ("If proceedings for deportation had been initiated
prior to receipt of a request for extradition, deportation often
will be stayed or withdrawn pending completion of the extra-
dition proceeding.").

The United States government has followed established le-
gal practices in processing Burgos Noeller's extradition case.
It received a valid request from Mexico for extradition, and it
acted on that request as it is obliged to do under its extradition
treaty with Mexico. The subsequent proceedings have com-
plied with the treaty, applicable statutes, and the U.S. Consti-
tution.

Burgos Noeller's attempt to use this habeas corpus appeal
to attack collaterally his losses in his immigration case must
fail. Even if the Board committed constitutional error in

refusing to rule on his pending immigration claims, and we see no reason to believe that it did, that would present a separate issue that we have no jurisdiction to consider on this appeal. Separate statutes govern judicial review of Board decisions, including a decision to hold removal proceedings in abeyance. To obtain review of that decision, Burgos Noeller would need to pursue the proper channels for review of Board actions.[3] An effort similar to this case was made and rejected in *Barapind*, where the Ninth Circuit reviewed a habeas corpus petition seeking relief requiring the Board to vacate its decision to hold immigration proceedings in abeyance pending resolution of an extradition request by India, and enjoining the pending extradition proceeding. 225 F.3d at 1000, 1104, 1109. The court noted that Barapind did "little to explain the source of the district court's authority to enjoin a pending extradition proceeding, . . . a separate and independent proceeding from his asylum proceedings," and that "[s]uch relief, if available, must be sought through the extradition proceedings or on subsequent habeas review of an adverse decision in the extradition case." *Id.* at 1109. Likewise, Burgos Noeller cannot seek relief from alleged violations in his immigration proceedings in the separate and independent extradition process.

Even if the Board does not adjudicate Burgos Noeller's claims for asylum, withholding, and relief under the Convention Against Torture before his extradition challenge is concluded, he also may present these humanitarian issues to the

---

[3] In his district court reply brief, Burgos Noeller asserted that he "intends to challenge the abeyance order through a claim under the Administrative Procedure Act and the Mandamus and Venue Act." We express no views on the possibility.

Secretary of State. "It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds." *Ahmad v. Wigen*, 910 F.2d 1063, 1067 (2d Cir. 1990); see also *Munaf v. Geren*, 553 U.S. 674, 702 (2008) ("The Executive Branch may, of course, decline to surrender a detainee for many reasons, including humanitarian ones.").

The district court's denial of Burgos Noeller's habeas corpus petition is AFFIRMED.